Shane FLEMING, Plaintiff-Respondent,

v.

# THRESHERMEN'S MUTUAL INSURANCE COMPANY and Gregory Putzke, Defendants-Appellants.

Supreme Court

*No. 84–1873. Argued January 7, 1986.—Decided June 20, 1986.*

(Also reported in 388 N.W.2d 908.)

For the defendants-appellants there were briefs by *Lila M. Hambleton* and *Doar, Drill & Skow, S.C.,* New Richmond, and oral argument by *Ms. Hambleton.*

For the plaintiff-respondent there was a brief by *Joe Thrasher* and *Weisel, Thrasher, Doyle & Pelish, Ltd.,* Rice Lake, and oral argument by *Joe Thrasher.*

WILLIAM G. CALLOW, J.   We accepted this case on certification from the court of appeals to decide whether a negligent tortfeasor has a right to indemnity or contribution from an intentional joint tortfeasor and to decide how a *Pierringer* release of an intentional joint tortfeasor affects the rights of a negligent tortfeasor. We conclude that a negligent tortfeasor has a right to indemnity from an intentional joint tortfeasor. We further conclude that a *Pierringer* release of an intentional joint tortfeasor operates to absolve a negligent tortfeasor of liability to a plaintiff because the negligent tortfeasor's right to indemnity from the intentional joint tortfeasor becomes a right to indemnity from the plaintiff.

This case arises from a confrontation in Rice Lake, Wisconsin, between two groups of young people in which the plaintiff, Shane Fleming, received injuries from a sawed-off shotgun blast. Fleming brought suit in the circuit court for Barron county, Judge Warren Winton, presiding, against two individuals: Darrell Seeger, who allegedly fired the sawed-off shotgun, and Gregory Putzke, who allegedly made the shotgun available. Fleming later amended the complaint to add Putzke's insurer, Threshermen's Mutual Insurance Company (Threshermen's).

Shortly before trial, Fleming settled his claim against Seeger for $20,000 and executed a *Pierringer* release in favor of Seeger and his insurer, releasing them from any further claims based on negligence or intentional wrongdoing. Because Putzke and Fleming could not reach agreement on a settlement, however, the case proceeded to trial. The court dismissed Seeger on the first day of the trial based on his settlement and release.

The jury found that Seeger intentionally shot Fleming and that Putzke was casually negligent in making the sawed-off shotgun available. The jury also found that Fleming's own negligence contributed to his injuries. The court, however, apparently believing that negligent conduct cannot be compared to intentional conduct, submitted to the jury a special verdict which asked the jury to compare only the relative fault of Fleming and Putzke, the two negligent parties. The jury apportioned 78 percent of the causal negligence to Putzke and 22 percent to Fleming. The jury awarded Fleming $20,000 for loss of future earning capacity and $20,000 for personal injury.

Putzke and Threshermen's made several post-verdict motions. First, they moved for a judgment notwithstanding the verdict, arguing that the release Fleming executed in favor of Seeger precluded Fleming from collecting his damages from them. They also moved for judgment notwithstanding the verdict on the ground that the acts of Fleming and Seeger were superseding causes of Fleming's injuries. Alternatively, they moved for a new trial on the ground that Seeger should have been included in the special verdict question which asked the jury to compare the fault of Putzke and Fleming.

The court denied the defendants' motions after verdict and entered judgment against the defendants, jointly and severally, in the sum of $25,000 plus costs and disbursements. The limit of Threshermen's liability is $25,000 under its policy covering Putzke. The court also entered judgment against Gregory Putzke severally in the amount of $8,326.47. In total, the court awarded $33,326.47 in damages, an amount equal to Fleming's total damages less only 22 percent, the per-

centage of causal negligence attributed to Fleming. The court did not credit Putzke and Threshermen's with any portion of the damages which Seeger paid to Fleming under the *Pierringer* release.

Putzke and Threshermen's appealed to the court of appeals from the judgment entered by the circuit court. The court of appeals certified the appeal to this court, and we accepted certification.

This case presents two issues: First, whether a negligent tortfeasor has a right to indemnity or contribution from an intentional joint tortfeasor; and, second, whether a *Pierringer* release of an intentional joint tortfeasor affects the rights of a negligent tortfeasor. Because each of these issues is a question of law, we need not give deference to the lower courts' reasoning. *Milwaukee Metropolitan Sewerage District v. DNR*, 126 Wis. 2d 63, 71, 375 N.W.2d 648 (1985).

Putzke's basic contention is that the judgment entered by the circuit court is inequitable. Had Seeger been guilty of acting negligently, rather than intentionally, the *Pierringer* release of Seeger would have operated to reduce Putzke's liability to Fleming by the percentage of causal negligence attributable to Seeger. Because Seeger acted intentionally, however, the circuit court did not ask the jury to assess a percentage of causal negligence against Seeger and ruled that the *Pierringer* release did not operate to reduce Putzke's liability to Fleming. Putzke asserts that it is illogical and inequitable to give a negligent tortfeasor fewer rights against an intentional joint tortfeasor than against a negligent joint tortfeasor. Therefore, while Putzke claims that principles of equity mandate that a negligent tortfeasor should have a right to indemnity from an intentional joint tortfeasor, he alternatively argues

127

that, at a minimum, a negligent tortfeasor should have a right to contribution from an intentional joint tortfeasor.

Fleming essentially contends that Putzke has neither a right to indemnity nor a right to contribution from Seeger. According to Fleming, it is not inequitable for someone as negligent as Putzke to bear some liability for the consequences of his actions. Even granting that Putzke may have a right to indemnity from Seeger, however, Fleming argues that the issues Putzke raises on appeal are not properly before this court. First, Fleming asserts that the issues are moot because Putzke never cross-claimed for indemnity. Second, Fleming claims that Putzke lacks standing to challenge the judgment. Fleming apparently bases the latter argument on the premise that the court's dismissal of Seeger did not effect a dismissal of Putzke's alleged indemnity claim against Seeger because Putzke had not cross-claimed for indemnity prior to the settlement.

■ Neither of Fleming's standing arguments has any merit. The failure to cross-claim for indemnity is only relevant if such a claim must be raised in the action between a plaintiff and a nonsettling defendant. Under sec. 802.07, Stats., Putzke can assert his indemnity claim in a separate action. Because many defendants, especially those represented by insurers, settle before a plaintiff commences suit against other joint tortfeasors, it would be impractical and counterproductive to require a defendant to insist that a plaintiff commence suit prior to settlement in order that cross-claims could be filed before the settlement. The legal effect of the *Pierringer* release affects the correctness of the judg-

ment regardless of whether a cross-claim has been filed. Therefore, we must decide whether a negligent tortfeasor has a right to indemnity or contribution from an intentional joint tortfeasor and whether a *Pierringer* release of the intentional joint tortfeasor affects any right a negligent tortfeasor may have.

In *Swanigan v. State Farm Insurance Co.,* 99 Wis. 2d 179, 196, 299 N.W.2d 234 (1980), we discussed the difference between contribution and indemnity. We noted that, while contribution distributes the loss among defendants on the basis of comparative fault, indemnity allocates the entire loss to one defendant on the basis of equitable principles. *Id.*

Wisconsin was one of the first states to allow contribution among tortfeasors. *See* W. Prosser, *The Law of Torts,* sec. 50 at 306–07 (4th ed. Hornbook Series 1971). In *Ellis v. Chicago & Northwestern Railway Co.,* 167 Wis. 392, 409, 167 N.W. 1048 (1918), we stated that the rule allowing contribution should be followed when the conduct of the defendants is not willful or conscious.

Since our decision in *Ellis,* we have continued to uphold the rule that those guilty of intentional misconduct are not entitled to contribution. *See, e.g., Jacobs v. General Accident Fire & Life Assurance Corp.,* 14 Wis. 2d 1, 5, 109 N.W.2d 462 (1961); *Zurn v. Whatley,* 213 Wis. 365, 372, 251 N.W. 435 (1933). This line of cases is consistent with our decision in *Schulze v. Kleeber,* 10 Wis. 2d 540, 545, 103 N.W.2d 560 (1960), wherein we held that an intentional wrongdoer should not benefit from the contributory negligence of a plaintiff.

Recognizing the correctness of these decisions, we hold that a negligent tortfeasor has a right to indemnity from an intentional joint tortfeasor. Were we to allow a negligent tortfeasor only a right to contribution from an intentional joint tortfeasor, the intentional tortfeasor effectively would receive the benefit of contribution from the negligent tortfeasor, in direct conflict with the established law in this state. While this approach allows a defendant who is causally negligent to escape from liability in some circumstances, we believe that shifting the full responsibility for the loss to the intentional tortfeasor serves the policy of deterring conduct which society considers to be substantially more egregious than negligence.

Having concluded that Putzke has a right to indemnity from Seeger for any sums he is obligated to pay to Fleming in satisfaction of his liability, we now must decide how Fleming's *Pierringer* release of Seeger affects Putzke's liability.

Putzke argues that Fleming's *Pierringer* release of Seeger relieves him of liability to Fleming in an amount equal to Seeger's liability. Because Putzke has a right to indemnity from Seeger, he argues that under the *Pierringer* release Fleming must assume liability for all remaining damages.

Fleming contends that the *Pierringer* release affects only his rights against Seeger and does not foreclose Putzke's right to seek indemnity from Seeger. Because Putzke retains his right to pursue indemnity from Seeger, Fleming asserts that he should not have to assume the liability attributable to Seeger. Therefore, Fleming argues that he should be allowed to recover his damages from Putzke.

In *Pierringer v. Hoger,* 21 Wis. 2d 182, 124 N.W.2d 106 (1963), we held, as a matter of law, that a *Pierringer* release operates to impute to the settling plaintiff whatever liability in contribution the settling defendant may have to nonsettling defendants and to bar subsequent contribution actions the nonsettling defendants might assert against the settling defendants. We adopted this rule in the interests of judicial economy. *Id.* at 193.

In this case we must decide whether *Pierringer* principles apply to actions for indemnity as well as actions for contribution. We are persuaded that they do. In *Gauerke v. Rozga,* 112 Wis. 2d 271, 283–84, 332 N.W.2d 804 (1983), we recognized that the operation of a *Pierringer* is not affected by the distinction between contribution and indemnity. The interests of judicial economy are of equal concern whether a nonsettling defendant pursues a claim of indemnity or of contribution. Therefore, "there is no point in going through the circuity of ordering a judgment" against Putzke only to have Fleming ultimately satisfy it himself. *See Pierringer,* 21 Wis. 2d at 193.

One remaining question concerns the scope of the release. Fleming asserts that under the release his duty to indemnify Seeger exists only with regard to claims arising from Seeger's negligence, not from Seeger's intentional misconduct. Fleming argues that, because Seeger's liability to Putzke arises from Seeger's intentional misconduct, Seeger's liability to Putzke is not imputed to Fleming. Therefore, Putzke is not barred from seeking indemnity from Seeger.

As we noted in *Peiffer v. Allstate Insurance Co.,* 51 Wis. 2d 329, 336–37, 187 N.W.2d 182 (1971), a court should construe a release as it would a contract. Rules of construction favor an interpretation which gives a reasonable meaning to all terms over an interpretation which leaves part of the language useless or meaningless. *Id.*

The release states that Fleming will assume the portion of liability attributable to Seeger, "whether said liability is based on negligence, *intentional* act, statutory liability or any other theory of liability." (Emphasis added.) Were we to accept Fleming's argument, the emphasized phrase would be mere surplusage. Accordingly, we hold that the scope of the release extends to Seeger's intentional misconduct as well as his negligent misconduct.

Having concluded that Putzke has a right to indemnity from Seeger, and that this right to indemnity operates against Fleming by virtue of Fleming's release of Seeger, we need not address the question of superseding cause.

*By the Court.*—The judgment of the circuit court is reversed and cause remanded with directions to dismiss the action against the defendants.